UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| ASHLEY HENDRICKS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 4:08-cv-0180-TWP-WGH |
|  | ) |  |
| NEW ALBANY POLICE DEPARTMENT, | ) |  |
| CPL. JOHN HALL, FLOYD COUNTY | ) |  |
| PROSECUTOR'S OFFICE, KEITH | ) |  |
| HENDERSON, and ED ADAMS | ) |  |
|  |  |  |
| Defendants. |  |  |

## ENTRY ON MOTION TO DISMISS & MOTION FOR JUDGMENT ON THE PLEADINGS

This matter involving alleged violations of Plaintiff's constitutional rights is before the Court on two motions: (1) Floyd County Prosecutor's Office ("Prosecutor's Office") and Prosecutor Keith Henderson's ("Henderson") 12(b)(6) motion to dismiss [Dkt. 50]; and (2) Investigator Ed Adams' ("Adams") 12(c) motion for judgment on the pleadings [Dkt. 68]. Both motions stem from Plaintiff Ashley Hendricks' ("Plaintiff") allegations that she was subjected to false arrest, unlawful imprisonment, and illegal search and seizure in violation of the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983. Based on these alleged violations, Plaintiff brought suit against the New Albany Police Department, John Hall, the Floyd County Prosecutor's Office, Keith Henderson, and Ed Adams. For the reasons set forth below, the Court GRANTS the Prosecutor's Office and Henderson's 12(b)(6) motion to dismiss [Dkt. 50] in its entirety and DENIES Adams' motion for judgment on the pleadings [Dkt. 68].

# I. BACKGROUND

Because of a case of mistaken identity, Plaintiff (Ashley Hendricks) was thrown into a Kafkaesque nightmare: She was arrested, strip searched, and incarcerated for days when a different Ashley Hendricks should have been arrested. This unfortunate incident began on January 6, 2006, when New Albany Police Officer John Hall ("Hall") received a tip from a confidential informant that a woman (Ashley Hendricks the suspect, or "Ashley Hendricks") was selling crack cocaine from her apartment. (Amended Complaint ¶ 10). Based on the tip, Hall orchestrated a controlled buy from the woman at her apartment. *Id*. Following the buy, Hall checked with a security officer at the suspect's apartment building to ascertain the identity of the woman. *Id*. at 11. The security officer informed Hall that the apartment was leased to a woman named Ashley Hendricks and provided identifying information for this individual, including a copy of her Kentucky identification card. *Id*. Significantly, this card indicated that Ashley Hendricks was a black female born 06/25/1987 who resided at an address in Louisville, Kentucky. *Id*.

On August 3, 2006, Hall completed a probable cause affidavit stating his belief that Ashley Hendricks had committed the crime of dealing cocaine. The affidavit described Ashley Hendricks' identifying information, including her race, birthday, the Louisville, Kentucky address and the address where the controlled buy occurred. *Id*. at 14. Hall submitted the affidavit to Floyd County Prosecutor's Office investigator Ed Adams ("Adams"). *Id*. Subsequently, the affidavit was returned to Hall with a post-it note signed by a Chief Deputy Prosecutor for the Prosecutor's Office stating, "Ed: How do we know that black female = Ashley Hendricks." *Id*. at 15. Hall explained to Adams what steps he took to ascertain the identity of the

suspect, and Adams told Hall that he was going to retype the affidavit. *Id*. at 16.

On September 26, 2006, Hall returned to the Prosecutor's Office to sign the affidavit. *Id*. at 17. However, the new affidavit did not contain Ashley Hendricks' race or her Louisville, Kentucky address. *Id*. Instead, the new affidavit contained only the suspect's New Albany address where the controlled buy occurred. *Id*. Even more troubling, this new affidavit did not contain Ashley Hendricks' birthday, but instead contained Plaintiff's birthday (08/16/1977). *Id*. These problems notwithstanding, Hall signed the affidavit. *Id*. at 18.

According to Plaintiff's Amended Complaint, Defendant Henderson's role in this incident is relatively limited. In relevant part, the Amended Complaint alleges, "The next day, Defendant, Keith Henderson, filed the Affidavit in conjunction with an Information charging Ashley Hendricks of [the address where the controlled buy occurred], DOB 08/16/1977, with the offense of Dealing in Cocaine within a thousand (1,000) feet of a family housing complex." *Id*. at 19. Based on the affidavit and the information, the Floyd Circuit Court issued an arrest warrant for Ashley Hendricks. *Id*. at 20. Needless to say, the warrant was replete with errors and omissions, containing an incorrect birthday and address. *Id*.

On August 13, 2007, Plaintiff, living in Indianapolis, contacted the Indianapolis Metropolitan Police Department to report an altercation in her neighborhood. *Id*. at 21. After identifying herself to the officers who arrived on the scene, Plaintiff was arrested for violating state narcotics laws based on the faulty warrant. *Id*. at 22-23. Plaintiff pleaded that she was innocent and that she never lived at the suspect's address, but these efforts were futile. *Id*. at 24. After a protracted intake process, Plaintiff was booked into the Marion County jail and then transferred to the Floyd County jail until her arraignment. *Id*. at 25-27. During this process,

3

Plaintiff was held for three days and was strip searched three different times. *Id*. at 25-27. Thankfully, the charges against Plaintiff were eventually dismissed. *Id*. at 28.

On August 12, 2009, Plaintiff filed her Amended Complaint, alleging that Defendants violated 42 U.S.C. § 1983 by depriving her of rights under the Fourth and Fourteenth Amendments.

## II. DISCUSSION

**A.     Prosecutor's Office and Henderson's 12(b)(6) Motion to Dismiss**

1.     *Legal Standard*

On this 12(b)(6) motion, the moving parties are limited to two Defendants: (1) the Prosecutor's Office and (2) Prosecutor Henderson. Pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and there is no need for detailed factual allegations. *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citation omitted). Nevertheless, the statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. (citations and internal quotations omitted). "Although this does 'not require heightened fact pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to relief that is plausible on its face.'" *Killingsworth v. HSBC Bank Nevada, N.A.*, (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)).

4

## 2. *Claim Against the Prosecutor's Office*

To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that some *person* has deprived her of a federal right, and that the person who has deprived her of that right acted under the color of state law. *Jones v. Ind., et. al*, No. 1:08-CV-292-TS, 2009 WL 2168941, at *2 (N.D. Ind. July 16, 2009) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). The definition of "person" for purposes of § 1983 does not include states or their agencies. *Id*. (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63 (1989) (holding that states are not persons liable for damages under § 1983)). Therefore, § 1983 does not disturb a state's Eleventh Amendment immunity, "which precludes a citizen from suing a state or a state agency, including state officials in their official capacities, in federal court without the state's consent or congressional abrogation." *Id*. (citations omitted); *see also Hans v. Louisiana*, 134 U.S. 1 (1890) (doctrine of sovereign immunity, espoused by the Eleventh Amendment, prohibits lawsuits against states by their own citizens). Here, it is undisputed that the State of Indiana has not consented to this suit, the Prosecutor's Office has not waived immunity, and there has been no Congressional abrogation. Thus, if the Prosecutor's Office is a state agency, Plaintiff's suit is prohibited.

Indeed, persuasive case law supports the view that the Prosecutor's Office is an arm of the state. *See Jones*, 2009 WL 2168941, at *2 (holding that plaintiff was barred from suing Grant County Prosecutor's Office and any deputy prosecutor in his official capacity); *Omegbu v. Milwaukee County*, 326 Fed.Appx. 940, 942 (7th Cir. 2009) (holding that Milwaukee County DA's office and the prosecutors who charged plaintiff cannot be sued under § 1983); *see also Study v. United States*, 782 F. Supp. 1293, 1297 (S.D. Ind. 1991) (holding that deputy

prosecuting attorneys in Indiana county were in "state office" positions, and therefore had absolute immunity even if they had acted "maliciously, wantonly or negligently"); *Bibbs v. Newman*, 997 F. Supp. 1174, 1178 (S.D. Ind. 1998) ("A prosecuting attorney in Indiana clearly acts as a state official when prosecuting criminal cases."); *Alexander v. Cummings*, No. 1:08-cv-1421-WTL-TAB, 2009 WL 2245099, at *3 (S.D. Ind. July 27, 2009) ("Because [the prosecutor's] actions stemmed from the prosecution of a RICO case and had nothing to do with the appropriation or disbursement of funds by the county, the Court concludes that [the prosecutor] acted as a state official rather than on behalf of the county."). This determination is further reinforced by the existence of Indiana statutes that specifically address prosecutorial issues. *See, e.g.,* Ind. Code § 33-39-6-5(d), § 33-23-13-3 (Indiana provides salaries to prosecutors and provides them with legal representation when they are sued). Under the circumstances, suing the Prosecutor's Office – a state agency – is akin to suing the State of Indiana itself.[1] Thus, the doctrine of sovereign immunity precludes Plaintiff's suit.[2]

### 3. *Claims Against Keith Henderson Individually*

As a threshold matter, in her opposition brief, Plaintiff specifies that she is suing Henderson "in his individual capacity" – not in his official capacity. [Dkt. 54 at 4]. Henderson counters that because he has been sued in his individual capacity, he is entitled to absolute

---

[1]In her Amended Complaint, Plaintiff alleges that the Prosecutor's Office had an unconstitutional practice, policy, or custom. This claim – based on *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978) – is not viable for the same reason. That is, the scope of *Monell* is "limited to local government units which are not considered part of the State for Eleventh Amendment purposes." *Id.* at 690 n. 54.

[2]Note that a suit against Henderson in his official, rather than individual, capacity would be barred for the same reason.

prosecutorial immunity. The Court is persuaded.

Assuming *arguendo* that the allegations against Henderson are adequate – which is its own unique question[3] – Plaintiff's claim against him in his individual capacity would still fail. The Supreme Court has held that a state prosecuting attorney who acts within the scope of his duties in initiating and pursuing criminal charges enjoys absolute immunity from suit under § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). The doctrine of absolute prosecutorial immunity extends not only to a prosecutor's actions in court, but also to his actions in preparing for the initiation of judicial proceedings that occur in the course of his role as an advocate for the state. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Even more on-point, in *Kalina v. Fletcher*, 522 U.S. 118 (1997), the Supreme Court ruled that a prosecutor's activities in connection with the preparation and filing of criminal charges (<u>in that case, as in this one, an information</u>) were protected by absolute immunity. *Id.* at 129; *see also Tompkins v. Prange*, No. 05-c-1691, 2006 WL 3486855, at *3-4 (N.D. Ill. Nov. 29, 2006) (holding that absolute immunity applied to prosecutor who signed and presented to a judge an information that he allegedly knew contained false allegations). Thus, binding precedent indicates that because Henderson acted within the prosecutorial sphere at all relevant times, the doctrine of absolute prosecutorial immunity applies. What is more, in her opposition brief, Plaintiff failed to respond to this argument, perhaps a tacit concession that the law is not on her side. The Court grants Henderson's motion to dismiss.

---

[3]Henderson argues that the allegations in the Amended Complaint are inadequate to state a viable claim against him individually. However, the Court need not address this argument, given that the absolute prosecutorial immunity issue is dispositive.

7

**B.     Adams' 12(c) Motion for Judgment on the Pleadings**

   **1.     *Legal Standard***

Courts apply the Fed. R. Civ. P. 12(b)(6) standard when ruling on 12(c) motions. *Guise v. BMW Mortg., LLC*, 377 F.3d 795, 798 (7th Cir. 2004). The primary difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is that "a party may file a 12(b) motion before its answer," whereas a Rule 12(c) motion may be filed "after the pleadings are closed but within such time as not to delay the trial." *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 n.3 (7th Cir. 1998). To avoid belaboring the point, the Court will apply the same standards articulated above that were applied to the motion filed by Henderson and the Prosecutor's Office.

   **2.     *Ed Adams' Claim of Absolute Prosecutorial Immunity***

Adams claims that, as an investigator for the Prosecutor's Office, he is entitled to absolute prosecutorial immunity. As discussed above, due to some concerns with Hall's affidavit, Adams retyped the affidavit (Amended Complaint ¶ 16). Curiously, however, by the time Hall returned to the Prosecutor's Office to sign the affidavit, it no longer contained the identifying information for Ashley Hendricks the suspect, but instead contained identifying information for Plaintiff Ashley Hendricks. *Id*. at 17. The dispositive question on this motion is whether Adams' alleged revision of the affidavit should be afforded absolute prosecutorial immunity. The Court believes that barring suit based on absolute prosecutorial immunity would be premature at this juncture.

As an initial matter, the fact that Adams is an investigator – and not an actual prosecutor – is of no import. It is well-settled that when determining whether or not absolute prosecutorial

immunity applies, the crucial inquiry is "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 228 (1988). Thus, the Court will adhere to this functional approach.

To be sure, this case is a closer call than the Henderson claim. On one hand, based on *Imbler* and its progeny – cited above – a prosecutor is absolutely immune when initiating a prosecution and presenting the State's case," *Imbler*, 424 U.S. at 431, up to and including "the selection of the particular facts to include in the certification to provide the evidentiary support for the finding of probable cause [requiring] the exercise of the judgment of the advocate." *Kalina*, 522 U.S. at 130. Arguably, this is precisely what Adams did, which would mean that he is sheltered from liability. On the other hand, the Supreme Court in *Buckley* made clear that investigative or administrative tasks do not enjoy absolute immunity. *Buckley*, 509 U.S. at 273 (finding that a prosecutor who traveled to crime scene to determine if evidence taken was sufficiently reliable to constitute probable cause was not acting as an advocate, but as an investigator). In other words, when a prosecutor functions as a police officer or investigator, he or she is not subject to absolute immunity. *Id*. at 276; *see also Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir. 1987) ("But when a prosecutor performs an investigative or administrative function rather than a prosecutorial one, absolute immunity is not available."). Indeed, the line between the prosecutor's roles as investigator and advocate is often a hazy one.

At this point in time, the Court cannot determine from the limited record whether or not Adams is entitled to absolute immunity, particularly given the fact that the Court must draw all reasonable inferences in favor of Plaintiff. Hall, a police officer, initially did investigative work in order to draft the affidavit. In order to redo the affidavit, Adams presumably did the same

9

type of work. Thus, the Court believes that this potential overlap in work is telling, and suggests that Adams' work was more investigative than prosecutorial. As Plaintiff notes, "The act of typing a police officer's Affidavit for Probable Cause is one that is typically performed by the officer himself, and by its very nature is a usual police activity." [Dkt. 74 at 7]. This fact certainly suggests that Adams was acting more like a police officer than a prosecutor, meaning he is not entitled to absolute immunity.

The Court simply does not have the requisite factual basis to determine whether or not Adams' conduct was prosecutorial in nature. Thus, the Court DENIES Adams' motion for judgment on the pleadings.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS the Prosecutor's Office and Henderson's motion to dismiss [Dkt. 50] in its entirety and DENIES Adams' motion for judgment on the pleadings [Dkt. 68].

SO ORDERED.

Date: 10/13/2010

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution attached.

Distribution to:

**Lynne Denise Hammer**
OFFICE OF THE INDIANA ATTORNEY GENERAL
Lynne.Hammer@atg.in.gov,Brenda.Mahana@atg.in.gov

**R. Jeffrey Lowe**
KIGHTLINGER & GRAY, LLP
jlowe@k-glaw.com

**Stacy K. Newton**
RUDOLPH FINE PORTER & JOHNSON
skn@rfpj.com,thj@rfpj.com

**Ross E. Rudolph**
RUDOLPH FINE PORTER & JOHNSON
rer@rfpj.com,smo@rfpj.com,mch@rfpj.com

**Nicholas F. Stein**
nick@nicksteinlaw.com,pat@nicksteinlaw.com,julie@nicksteinlaw.com

**Cory Christian Voight**
INDIANA OFFICE OF THE ATTORNEY GENERAL
cory.voight@atg.in.gov,brenda.mahana@atg.in.gov

**Amy R. Wheatley**
LAW OFFICE OF NICHOLAS STEIN
amy@nicksteinlaw.com