UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ASHLEY HENDRICKS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:08-cv-0180-TWP-WGH |
| NEW ALBANY POLICE DEPARTMENT, CPL. JOHN HALL, and ED ADAMS | ) ) ) ) |
| Defendants. | ) ) |

## ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment [Dkt. 81] brought by Defendants: (1) New Albany Police Department Detective John Hall ("Hall"), and (2) the New Albany Police Department ("NAPD") (collectively, "Defendants"). This motion stems from Plaintiff Ashley Dakota Hendricks' ("Plaintiff") allegations that she was subjected to false arrest, unlawful imprisonment, and illegal search and seizure. Plaintiff's Amended Complaint pursues both state and federal claims against Defendants. For the reasons set forth below, the Court **GRANTS** Defendants' Motion for Summary Judgment in part and **DENIES** the Motion for Summary Judgment in part.

## I. BACKGROUND

In August 2007, because of a case of mistaken identity, Plaintiff was wrongfully deprived of her liberty and her life was temporarily turned upside down: Plaintiff (Ashley Hendricks) was arrested, strip searched, and incarcerated for multiple days when a different Ashley Hendricks should have been arrested. This disturbing incident began on January 6, 2006, when Detective

Hall, as part of a large-scale narcotics investigation at a New Albany housing complex, received a tip from a confidential informant that a woman (Ashley Hendricks the suspect, or "Ashley Hendricks") was selling crack cocaine out of her apartment. Based on this tip, Hall orchestrated a controlled buy. Following the buy, Hall spoke with the director of security for the housing complex, Clark Jeffries ("Jeffries"), to ascertain the identity of the woman. Jeffries informed Hall that the apartment was leased to a woman named Ashley Hendricks and provided identifying information for this individual, including a Kentucky identification card and a copy of her lease agreement. Significantly, this identification card contained Ashley Hendricks' birthdate and indicated that she was a black female who resided at an address in Louisville, Kentucky.

Nearly seven months later, on August 3, 2006, Hall completed a probable cause affidavit as a prerequisite to obtaining an arrest warrant for Ashley Hendricks. In his deposition, Hall attributed the long lag between the drug buy and the affidavit to the scale of the investigation; to maximize arrests and preserve secrecy, the plan was to compile evidence against as many members of the drug cabal as possible and to arrest them all in one fell swoop. The affidavit, stated verbatim, follows:

> State of Indiana vs. Ashley Hendricks, 228 Glendora, Louisville, Kentucky, [**Suspect's DOB**]
>
> I, John Hall, a Officer with the New Albany Police Department, swear that I believe and have good cause to believe that Ashley Hendricks on or about January 6, 2006 committed the offense of Dealing in Cocaine under 3 grams, within 1,000 [feet] of a Housing Complex in Floyd County, State of Indiana based on the following information:
>
> On January 6, 2006, C.I. 1599 and I went to #23 William O. Vance Court reference a drug transaction. When I arrived at that location, I searched C.I. 1599 and gave him $20 in cash to purchase cocaine. The C.I. went to the

2

> rear of 23 Vance Court and a black female came to the door and gave C.I. 1599 the cocaine and he gave her the money. C.I. 1599 came back to my vehicle and gave me the cocaine that he had just purchased. Later, the substance tested positive for cocaine and weighed .3 gram.

This affidavit contained Ashley Hendricks' correct identifying information obtained from her Kentucky identification card, including her Louisville, Kentucky address. In fact, Hall testified that he specifically included Ashley Hendricks' Louisville, Kentucky address because he learned that she had been evicted from the New Albany address.

After drafting the affidavit, Hall sent it to the Floyd County Prosecutor's Office ("Prosecutor's Office"). Later, the affidavit was returned to Hall with a post-it note stating, "Ed- How do we know that 'black female'= Ashley Hendricks." Upon receiving the affidavit and post-it note, Hall called the Prosecutor's Office investigator Ed Adams ("Adams") to explain the steps he took to ascertain the suspect's identity. Adams then told Hall that he would retype the affidavit because he wanted to alter its format. Apparently, though, Adams changed more than the format. The revised affidavit stated as follows:

> State of Indiana vs. Ashley Hendricks, [ **Plaintiff's DOB**], 23 William O. Vance Court, New Albany, Indiana
>
> I, John Hall, a Detective with the Jeffersonville Police Department swear that I believe and have good cause to believe that Ashley Hendricks on January 6, 2006 committed the offense of Dealing in Cocaine under 3 grams within 1,000 feet of a Federally Funded Housing Complex based on the following information to wit:
>
> On January 6, 2006, I received information from C.I. 1599 that he could buy narcotics from the resident at 23 William O. Vance Court. I gave the C.I. $20 for the purchase of cocaine and searched him before he went into the residence. I parked near that location and observed the C.I. go inside that location. When the confidential informant returned to my vehicle, he had a piece of cocaine that he advised he had purchased for $20 from a female inside the residence.

> Later I checked with Clark Jeffries, the Public Housing Authority's security advisor, and he advised that the female that lived there was Ashley Hendricks. Later I had Officer Travis Jones try to obtain the information of the subjects who lived there and he was advised by the occupants that they were Ashley Hendricks and Deshawn Walker.

Clearly, the revised affidavit did not contain Ashley Hendricks' race or her Louisville, Kentucky address. Far worse, the revised affidavit did not contain Ashley Hendricks' birthday, but instead contained Plaintiff's birthday.

On September 26, 2006, Hall returned to the Prosecutor's Office to sign 15 to 20 affidavits relating to the investigation at the New Albany housing complex, including the Ashley Hendricks affidavit. Hall completed a totally inadequate and cursory review of the affidavits prior to signing them. In relevant part, Hall testified, "And when I was going through them, I was looking at the name . . . I was looking at the date that it occurred because I knew on or about when everything occurred, the charge, and then I was reading the body paragraphs of what occurred. And if it all seemed correct, then I was signing them." During Hall's review, he noticed the removal of the Louisville, Kentucky address from the Ashley Hendricks affidavit. Apparently, the Prosecutor's Office made this change because "they wanted the New Albany address of where [the controlled buy] occurred and [it showed] that she lived there at the time." Unfortunately, Hall did not catch the birthdate error. According to Hall, he did not confirm birthdate information because he had no reason to believe that it would be substantively changed. Hall does not recall if he caught the fact that the phrase "black female" had been removed from the affidavit. These issues notwithstanding, Hall signed the affidavit, along with 15 or 20 others.

Hall further testified that, typically, he typed his own affidavits and the Prosecutor's

Office accepted them. In fact, in Hall's experience, this was the only time that the Prosecutor's Office typed up the affidavit, at least since Keith Henderson had taken the helm as Prosecutor. Under Prosecutor Henderson's predecessor, however, the Prosecutor's Office typically typed affidavits. In addition, in Hall's experience, this was the only time the Prosecutor's Office had returned an affidavit to him with a post-it note. Given the anomalous nature of the Ashley Hendricks affidavit, Hall retained the original copy for his records. On this point, Hall testified, "It just struck me as odd, and I thought that there was enough information in that to charge the correct person without giving too much of my case away." Despite his belief that the affidavit was out of the ordinary, Hall did not exercise due diligence of making a more thorough and detailed examination of the information supplied in support of the affidavit.

Ultimately, based on the affidavit and an information, the Floyd Circuit Court issued an arrest warrant for Ashley Hendricks. Because the faulty affidavit formed the basis for the warrant, the warrant contained an incorrect birthday.

On August 12, 2007, Plaintiff, living in Indianapolis, contacted the Indianapolis Metropolitan Police Department concerning an argument between her mother and her neighbor. The officers who arrived on-scene obtained Plaintiff's personal information and ran a background check. The faulty arrest warrant was discovered and Plaintiff was arrested. After a protracted intake process, Plaintiff was booked into the Marion County jail and then transferred to the Floyd County jail until her arraignment. Plaintiff was held for multiple days and strip searched three different times. The charges against Plaintiff were eventually dismissed.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "Neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubts as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III.  DISCUSSION

Plaintiff is pursuing both state and federal claims against Hall and the NAPD. The state and federal claims against each Defendant are analyzed separately below.

**A.     State Claims against Hall**

The Indiana Tort Claims Act prohibits tort suits against government employees personally for conduct within their scope of employment. *Lessley v. City of Madison, Ind.*, 654 F. Supp. 2d 877, 902 (S.D. Ind. 2009) (citing IND. CODE § 34-13-3-5(b), which provides, "A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally."). The evidence unmistakably indicates that Hall acted within the scope of his employment at all times, and Plaintiff does not seriously contest this issue. In fact, Plaintiff's Amended Complaint states, "At all relevant times herein, the defendant, Cpl. John Hall, was acting within the scope of his duties as an employee of the defendant, New Albany Police Department." [Dkt. 37 at 8]. Clearly, Hall cannot be held liable for Plaintiff's state law claims. This would be true even if his behavior was egregious. *See, e.g., Bushong v. Williamson*, 790 N.E.2d 467, 473 (Ind. 2003) (employees are not liable for acts performed within the scope of their employment even if acts were criminal). As such, the Court **GRANTS** Defendants' Motion for Summary Judgment as it applies to Plaintiff's state law claims against Hall individually.

**B.      Federal Claims against Hall**

Plaintiff's 42 U.S.C. § 1983 claims turn on whether or not Hall is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (citation and internal quotations omitted). Whether a government official is entitled to qualified immunity is a legal question for resolution by the court, not a jury. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Hughes v. Meyer*, 880 F.2d 967, 969 (7th Cir.1989).

Qualified immunity "ordinarily should be decided by the court long before trial," because "[t]he entitlement is an *immunity from suit* rather than a mere defense to liability." *Hunter*, 502 U.S. at 227-28 (quotation omitted). The doctrine protects public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982); *see also Borello v. Allison*, 446 F.3d 742, 746 (7th Cir. 2006) ("Qualified immunity protects a defendant from liability as well as from the burden of standing trial. For that reason, courts should determine as early on in the proceedings as possible whether a defendant is entitled to qualified immunity."). Finally, qualified immunity covers "mere mistakes in judgement, whether the mistake is one of fact or one of law." *Butz v. Economou*, 438 U.S. 478, 507 (1978).

The applicability of qualified immunity is determined by a two-part inquiry established in *Saucier v. Katz*, 533 U.S. 194 (2001). First, the court "must consider ... this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. Second, the Court must decide whether the right at issue was "clearly established" at the time of the officer's alleged misconduct. *Id.* The answer to both *Saucier* questions must be in the affirmative in order for plaintiff to defeat an officer's motion for summary judgment on qualified immunity grounds. *Clem v. Corbeau*, 284 F.3d 543, 549 (4th Cir. 2002).

Formerly, *Saucier* set out rigid obligations for district courts, mandating a two-step sequence in which the first inquiry had to be answered before the second inquiry could be assessed. *Pearson*, 129 S.Ct. at 815-16. This rigid formalism engendered considerable backlash; some courts voiced criticism of the rule, while others eschewed it altogether. *Id.* at

817-18. Based on this concern, the Supreme Court recently revisited and loosened the much-maligned *Saucier* procedure, deciding that it "should not be regarded as an inflexible requirement." *Id*. at 813. Thus, the Court need not resolve the two inquiries in a sequential fashion, and is free to address the second inquiry before the first. *Id*. at 818 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

Thanks to *Pearson*, the Court can bypass a detailed analysis of the first inquiry, because the second inquiry is dispositive under the circumstances. Specifically, the second inquiry – whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct – "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. (citation omitted). In other words, for the right to be *clearly established*, "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. Thus, as long as "officers of reasonable competence could disagree on [the] issue, immunity should be recognized." *Wagner v. Washington County*, 493 F.3d 833, 837 (7th Cir. 2007) (citations and internal quotations omitted). Stated differently, the "clearly established" inquiry asks whether "in the light of pre-existing law the unlawfulness ... [of the conduct was] apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Finally, the plaintiff bears the burden of demonstrating the violation of a clearly established right. *Forman v. Richmond Police Dep't*, 104

9

F.3d 950, 957-58 (7th Cir.1997).

Here, Hall drafted an affidavit that correctly included suspect Ashley Hendricks' identifying information. By the time he signed the affidavit, however, some of the information had been changed by the Prosecutor's Office investigator Adams. Specifically, the birth date was erroneously changed, and the suspect's race and Louisville, Kentucky address were omitted. While Hall confirmed the name, date, charge, and narrative prior to signing the affidavit, he failed to double-check the birthdate, because he had no reason to suspect that it would be substantively changed.

While an officer should use great care and diligence in preparing affidavits for arrest warrant so at to avoid arresting the wrong persons, the Court simply cannot find that Hall's behavior would have put a reasonable officer on notice that his conduct was unlawful or unconstitutional. Nothing would have made the alleged unlawfulness of Hall's conduct "apparent." As Hall notes in his reply brief, Plaintiff "fails to point to any case law that concerns similar facts that would warn Hall that failing to notice that the prosecutor's office changed a birthdate would be unconstitutional." [Dkt. 95 at 3]. Thus, even if this Court finds that Hall's conduct in submitting his affidavit constituted a reckless disregard for the truth rather than negligence or innocent mistake – which would be necessary for the first *Saucier* inquiry – Hall would still be entitled to qualified immunity for Plaintiff's § 1983 claims.

To counter this, Plaintiff cites to *Olson v. Tyler*, 771 F.2d 277 (7th Cir. 1985), which stands for the proposition that if an officer seeking a warrant purposefully or recklessly withholds facts that could negate probable cause, the officer may be liable for violating the victim's civil rights. *Id*. at 281 ("If an officer submitted an affidavit that contained statements he

knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, not only is his conduct the active cause of the illegal arrest, but he cannot be said to have acted in an objectively reasonable manner."). Specifically, the *Olson* court held that an arrestee who alleged that he was arrested by chief of city police for a crime committed at a time the chief knew arrestee was incarcerated in another county stated a claim under § 1983.

The circumstances are distinguishable. In *Olson*, the defendants "effectively conceded that they had no reasonable belief that [plaintiff] had committed the crime charged." *Id*. at 281. Here, by contrast, Hall's cardinal sin that led to Plaintiff's trauma was failing to notice that an investigator at the Prosecutor's Office had unilaterally changed a birthdate that Hall had correctly provided on the previous version of the affidavit.[1] Although an officer has a duty to make certain the identifiers are correct when submitting information for something as critical as an arrest warrant, there is no hint at the possibility that Hall acted in bad faith or that he recklessly disregarded facts that would have negated probable cause as in *Olson*. To the extent Hall clearly made a horrible mistake, the evidence suggests that it was not done maliciously or intentionally and that it did not amount to a violation of a clearly established law. Under the circumstances, the Court has no choice but to afford Detective Hall immunity from suit. As such, the Court **GRANTS** summary judgment as to Plaintiff's federal claims against Hall

---

[1]Plaintiff also emphasizes that the Prosecutor's Office changed the address on the affidavit, yet Hall still signed the affidavit. The Court agrees with Hall that this is a bit of a red herring, given that the change in address had nothing to do with Plaintiff's arrest and incarceration. Plaintiff was only arrested based on her maiden name and her birthdate matching the one on the arrest warrant. Ashley Hendricks' address was simply immaterial to Plaintiff's arrest.

individually.

## C. State Claims against NAPD

Plaintiff's state law claims against NAPD include false arrest, false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress. NAPD's sole argument to counter these claims is that it is entitled to immunity pursuant to the Indiana Tort Claims Act. Specifically, NAPD highlights that IND. CODE § 34-13-3-3(6) provides that a governmental entity is not liable if a loss results from "the initiation of a judicial . . . proceeding."

On numerous occasions, Indiana courts have fleshed out the meaning of *initiation of a judicial proceeding*. *See, e.g., Livingston v. Consolidated City of Indianapolis*, 398 N.E.2d 1302 (Ind. Ct. App 1979). Specifically, Indiana courts have differentiated malicious prosecution, which is subject to immunity, from false arrest and false imprisonment, which are not. *Id*. at 1305. On this point, in *Butt v. McEvoy*, 669 N.E.2d 1015 (Ind. Ct. App. 1996), the court expressly recognized that "false arrest and false imprisonment, which are committed to the sole discretion of police officers, are not entitled to immunity." *Id*. at 1017 (citation omitted).

NAPD relies entirely on the immunity argument and does not really challenge the viability of Plaintiff's underlying substantive allegations regarding false arrest and false imprisonment. Stripped of its immunity argument, NAPD does not a pursue a "motion for summary judgment [that] is properly made and supported." Fed R. Civ. P. 56(e)(2). It is well settled that the moving party bears the initial burden of showing that it is entitled to summary judgment. *Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 460 (7th Cir. 2010). When a party fails to carry this burden, summary judgment is inappropriate because the burden of

12

defeating summary judgment does not shift to the non-movant. *Id*. As such, summary judgment is inappropriate for Plaintiff's state law claims for false arrest and false imprisonment.[2] The Court therefore **DENIES** summary judgment as to Plaintiff's claims against NAPD for false arrest and false imprisonment.

As for Plaintiff's emotional distress claims, IND. CODE § 34-13-3-3(8) is the operative provision. It provides, "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: ... (8) The adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment." Further, "to receive immunity under this section of the ITCA, a defendant must: (1) be engaged in the enforcement of law; and (2) act within the scope of employment." *Parish v. City of Elkhart*, No. 3:07-cv-452, 2010 WL 4054271, at *2 (N.D. Ind. Oct. 15, 2010) (citation omitted); *see also Kibbey v. Marion County*, No. 1:09-cv-143, 2010 WL 1881281, at *8 (S.D. Ind. May 10, 2010) ("When determining whether a governmental entity is entitled to immunity under [this provision], the Court asks whether the employee was acting within the scope of his employment when the activity occurred.").

Hall indisputably acted within the scope of his employment at all relevant times. Thus, immunity applies to Plaintiff's emotional distress claims. *See Parish*, 2010 WL 4054271, at *4 (ruling that City of Elkhart was immune from intentional infliction of emotional distress claim

---

[2]To the extent NAPD does challenge the underlying substance of Plaintiff's false arrest and false imprisonment claims, NAPD only really does so in its reply brief. It is well-settled that arguments raised for the first time in the reply brief are waived. *See, e.g., Praigrod v. St. Mary's Medical Center*, No. 3:05-cv-0166-JDT-WGH, 2007 WL 178627, at *3 (S.D. Ind. Jan. 19, 2007).

because "[c]ommon law 'add-on' torts, such as IIED, are not exceptions to the law enforcement immunity under the ITCA."). Thus, the Court **GRANTS** summary judgment as to Plaintiff's negligent and intentional infliction of emotional distress claims against NAPD.

**D.     Federal Claims against NAPD**

Pursuant to *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658 (1978), municipalities and other local government units can be subject to liability under § 1983. *Id*. at 690. But this liability is hardly limitless; in fact, municipalities and local government units cannot be held liable for § 1983 claims under a theory of *respondeat superior*. *Garrison v. Burke*, 165 F.3d 565, 571 (7th Cir. 1999) (citation omitted). "[R]ather, the municipality is only responsible for its employees' actions if taken pursuant to an unconstitutional policy or custom of the municipality itself." *Id* (citation omitted). Such a policy or custom can take one of three forms:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Id*. at 571-72. Thus, "in order to survive summary judgment," Plaintiff must "present evidence demonstrating the existence of an official policy, widespread custom, or deliberate act of a county decision-maker of the municipality or department." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations and internal quotations omitted). In addition, Plaintiff must show that the official policy or custom was the "moving force" behind the constitutional violation. *Id*.

In lieu of pointing to a specific policy, custom, or deliberate act by a decision-maker to bolster her claim, Plaintiff relies entirely on the factual parallels between the present

14

circumstances and *Murray v. City of Chicago*, 634 F.2d 365 (7th Cir. 1980). In *Murray*, the Seventh Circuit reversed the district court's decision to grant the city's motion to dismiss the plaintiff's *Monell* claims after plaintiff sustained a violation of constitutional rights by being arrested and detained pursuant to an invalid warrant. Specifically, the court recognized that "Plaintiff should be entitled to discovery in order to determine who is the true culprit responsible for the wrong done her." *Id*. at 366. Accordingly, the court ruled that it would be "premature to deny appellant relief at the present stage of the case, *in advance of discovery* or trial." *Id*. at 366. (emphasis added). Here, by contrast, Plaintiff has been afforded ample time to engage in discovery. This case was filed on October 23, 2008, and these Defendants were named at the genesis of the case. [Dkt. 1]. The discovery deadline ended over 20 months later, on July 12, 2010. [Dkt. 60]. According to NAPD, "[Plaintiff] has never inquired of Defendants what practice is used by New Albany in reviewing arrest warrants . . . [nor has she] served Interrogatories or Requests for Production on New Albany." [Dkt. 95 at 4].

Plaintiff contends that she "should be allowed a chance to determine if there exists a policy, custom, or practice that indicates that either similar unwarranted arrests have occurred frequently, or there is a dereliction of duty of constitutional dimension upon the part of the responsible officials." [Dkt. 85 at 11-12]. Other than this vague allusion to discovery problems, however, Plaintiff does not specify why she cannot point to a custom, policy, or practice at this time. The Court will not – and cannot – manufacture such a custom, policy, or practice for her. To do so would contravene the well-established principle that "[s]ummary judgment is the 'put up' or 'shut up' moment in a lawsuit." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2) (the nonmoving party must submit

evidentiary materials that "set out specific facts showing a genuine issue for trial.").

Finally, the *Murray* case notwithstanding, the Seventh Circuit has regularly granted summary judgment where the plaintiff fails to put forth evidence relating to one of the *Garrison* requirements. On this point, *Garrison* itself is instructive. *Garrison*, 165 F.3d 565 (granting summary judgment for city because fire department lieutenant did not act pursuant to city custom or policy in allegedly sexually harassing firefighter, because no evidence existed that city customarily or habitually ignored complaints of sexual harassment or that a final policy-making authority deliberately chose to ignore her complaints). Plaintiff has neither proffered the requisite evidence nor explained her dearth of evidence regarding NAPD's customs, policies, or practices. Accordingly, the Court **GRANTS** summary judgment as to Plaintiff's federal claims against NAPD.

## **CONCLUSION**

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment in part and **DENIES** the Motion for Summary Judgment in part. The Court **GRANTS** the Motion for Summary Judgment as to all of Plaintiff's state and federal claims against Hall. The Court also **GRANTS** the Motion for Summary Judgment as to Plaintiff's federal claims against New Albany Police Dapartment, and her state claims against New Albany Police Department for intentional and negligent infliction of emotional distress. The Court **DENIES** the Motion for Summary Judgment as to Plaintiff's state claims against New Albany Police Dapartment for false arrest and false imprisonment.

SO ORDERED: 11/01/2010

                                             _____
                                             Hon. Tanya Walton Pratt, Judge
                                             United States District Court
                                             Southern District of Indiana

Copies to:

**Lynne Denise Hammer**
OFFICE OF THE INDIANA ATTORNEY GENERAL
Lynne.Hammer@atg.in.gov,Tara.Burcham@atg.in.gov

**R. Jeffrey Lowe**
KIGHTLINGER & GRAY, LLP
jlowe@k-glaw.com

**Stacy K. Newton**
RUDOLPH FINE PORTER & JOHNSON
skn@rfpj.com,thj@rfpj.com

**Ross E. Rudolph**
RUDOLPH FINE PORTER & JOHNSON
rer@rfpj.com,smo@rfpj.com,mch@rfpj.com

**Nicholas F. Stein**
nick@nicksteinlaw.com,pat@nicksteinlaw.com,julie@nicksteinlaw.com

**Cory Christian Voight**
INDIANA OFFICE OF THE ATTORNEY GENERAL
cory.voight@atg.in.gov,tara.burcham@atg.in.gov,brenda.mahana@atg.in.gov

**Amy R. Wheatley**
LAW OFFICE OF NICHOLAS STEIN
amy@nicksteinlaw.com